(49 South. 630.)

No. 17,393.

SCRUGGS v. ENDOM.

(April 26, 1909. Rehearing Denied May 24, 1909.)

APPEAL AND ERROR (§ 1178*)—DISPOSITION OF CAUSE—REVERSAL—AMENDMENT OF PLEADING—DAMAGES.

This suit by plaintiff is for damages for being knocked down by a runaway team belonging to defendant and in charge of one of his drivers.

The petition disclosed a cause of action, but one defectively stated. The defendant's objections to the same were raised for the first time on objections to evidence. These objections were sustained by the trial court, and plaintiff's demand rejected.

On appeal that judgment is reversed, and the case is remanded, with leave to plaintiff to amend his pleadings; the court believing that in the interest of justice the facts of the case should be developed, and that evidence on the subject is easily obtainable one way or the other.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4616–4618; Dec. Dig. § 1178.*]

(Syllabus by the Court.)

Appeal from Sixth Judicial District Court, Parish of Ouachita; James Pemberton Madison, Judge.

Action by Levi S. Scruggs against Fred Endom. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

Oliver Cromwell Dawkins, for appellant. Lamkin, Millsaps & Dawkins, for appellee.

NICHOLLS, J. Plaintiff alleged: That on or about the 16th day of January, 1907, while crossing Sixth street, at De Siard street, in the city of Monroe, La., without fault or negligence on his part, but wholly and entirely by and through the gross and wanton fault, negligence, and carelessness of defendant, his agent, employé, and driver of a team of horses owned by defendant, petitioner was knocked down and run over by said team of horses belonging to defendant.

That he made timely and quick efforts to evade injury and get out of the way of said team, but was unable to do so, as said horses were running at full speed without a driver, and he was suddenly and violently struck, either by said team or the vehicle they were pulling, and knocked insensible to the hard pavement of the street; the violent fall onto the pavement or the terrible stroke of the said team breaking his collar bone, from which said injury plaintiff

suffered and still. suffers great bodily pain, and he fears and believes will suffer said pain the balance of his natural life. At the time of said collision the team of horses was without a driver; the said driver, an employé of defendant, a few moments before having leaped out of the vehicle, thereby wantonly, carelessly, and negligently permitting the horses of defendant to run at full speed upon the public streets of the city of Monroe, La., in violation of said city's ordinances, thus jeopardizing the safety and lives of people upon the streets, and particularly plaintiff.

Petitioner avers that he is 70 years of age, is a blacksmith by trade, and earns his living by said trade. At the time the great damage and injury was done him aforesaid by the team of defendant, he was employed as a blacksmith at the Vicksburg, Shreveport & Pacific railroad shops in the city of Monroe, La., and earning $3.75 per day. After said damage and injury aforesaid, petitioner was picked up from the pavement in an unconscious condition, and treated by physicians, and sent to Vicksburg, Miss., for further medical and surgical treatment, where he was compelled to remain away from his work under treatment of doctors for 65 days, all of which time he suffered great bodily pain. That this 65 days' loss of time from his work damaged him in the sum of $245 loss of salary. He is further damaged in the sum of $35 which he paid physicians in Monroe and Vicksburg, and for medicine, and in the sum of $45 for extra board in Vicksburg while under. treatment, all of which loss of time and salary, physicians' charges, medicine, and board bills, amounting to $245 was directly caused and occasioned by the damage and injury inflicted upon him by the team and vehicle of defendant, and through the gross and wanton carelessness and negligence of defendant and his agent and driver. He avers that defendant is further indebted to him in the sum of $2,000 damages for the injury, damage, pain, and suffering inflicted upon him by the team of defendant, through and by the gross and wanton negligence, carelessness, and fault of defendant and his said agent and driver as aforesaid, and in the further sum of $500 punitive and exemplary damages for the reckless, careless negligence and quasi criminal act of defendant and his agent, employé, and driver aforesaid. He avers repeated and amicable demand without avail.

In view of the premises, he prayed that defendant, Fred Endom, have service hereof, and be cited to answer hereto as the law directs, and upon a trial of this case that petitioner have judgment against said defendant for $2,815, with 5 per cent. per annum interest from legal demand upon same, and for other necessary orders, costs and general relief.

On September 24, 1907, defendant answered, pleading a general denial. Further answering, he averred that on or about the date mentioned respondent, who was engaged in the livery business in the city of Monroe, desired to send a vehicle with passengers to the town of Swartz, of that said parish and state, and that to that end and for that purpose he caused a team to be hitched up and put in readiness, the same having been done under the immediate direction and supervision of A. H. Endom, a competent, careful, and prudent employé of your respondent; that the harness, including the lines, and the vehicle to be used, were carefully examined by the said A. H. Endom, representing respondent, and were by him ascertained to be in a sound and perfect condition for uses to which they were about to be applied; that the said team was intrusted to the care of driver in the employ of respondent, the name of the said driver being Johnson Ross, and that he, the

said Ross, had for many years pursued the vocation of driver of livery teams, and was a careful, painstaking, experienced, reliable, and sober driver; that the said Ross, having been placed in charge of said team, proceeded along Grammont street, thence out Harrison, on his way to the point in the eastern part of the city of Monroe, where he was to pick up his passengers, and, having reached the corner of Harrison and South Sixth streets, the team driven by him, the said Ross, came suddenly upon an engine then and there being operated by the city of Monroe in connection with the sewerage work of said city, and the said horses took fright at the sudden and unexpected apparition of the engine in full operation in the street of said city, and ran down South Sixth street, in the direction of De Siard; that the driver, the said Ross, would have been able to control the said team, but for the breaking of one of the lines, being part of his harness, and on account thereof was utterly unable to control the said team, and was himself compelled, as an act of self-preservation, to leap from the hack, and that the said accident and its results were not chargeable to the fault or negligence of respondent, or of any of his agents or employés.

Respondent specially denied that the injuries alleged to have been received by plaintiff were caused by the fault, negligence, or carelessness of respondent, or any of his agents or employés.

In view of the premises respondent prayed that the demands of the plaintiff be rejected, at his costs, and for general relief.

On February 13th defendant excepted peremptorily that plaintiff's petition disclosed "no cause of action." The case was taken up for trial on the same day.

The district court rendered judgment in favor of the defendant, and plaintiff has appealed.

The judgment of the court was rendered upon the actual state of the evidence when the case was closed.

Appellant urges that the court improperly and illegally restricted and limited him in his cross-examination of Johnson Ross, the driver of the runaway team which caused plaintiff's injury, who was then on the stand as a witness on behalf of the defendant.

He reserved a bill of exceptions to the court's action and ruling in this respect, which recites that on the trial he offered to show by Johnson Ross, the driver of the team of horses, the nature of those horses; that they were wild and easily frightened, and ran away or attempted to run away, and that the witness had often driven those horses, and it was the fault and carelessness of said Ross to have driven them or attempted to drive them by a pump engine likely to frighten them and cause them to run away, he knowing the nature of the horses and the location of the pump engine; that defendant's counsel objected to said testimony on the ground that there was no allegation in plaintiff's petition that the horses were wild, and same was not covered by the pleadings; that the court sustained the objection and excluded the testimony. What occurred on the occasion of the cross-examination of the witness is shown by the following extract from the same:

"Q. How long had this engine been down at the corner of Harrison and Sixth streets?

"A. Why, I had been seeing it there all summer.

"Q. How came you to go, knowing those horses were sensitive, down by that engine?

"A. I had passed it before with them.

"Q. How long was it before this those sensitive horses had run away?

"(Objected to, as there is no allegation in the petition that these horses were wild, sensitive, or had ever run away, and for the further reason that it is irrelevant. Objection sustained, and bill reserved.)

\*      \*      \*      \*      \*      \*      \*      \*

"Q. What was the last time before this that you drove this team of horses down Grammont and Harrison street?

"A. A week before.

"Q. The pumping engine was there?

"A. Yes, sir; it was there at the time. It was there, and I drove right by it.

"Q. Was it running?

"A. No, sir.

"Q. Well, now, Johnson, isn't it a fact that at the time Mr. Kuhn was standing there in his door at the corner of De Siard and Sixth, and the men were coming out of the Vicksburg, Shreveport & Pacific shops, that the engine was not running?

"A. I don't know who was standing there. Just as soon as I got to the engine, it started up.

\* \* \* \* \* \* \* \*

"Q. How many times had you driven this team by that engine before?

"A. I can't say. I don't know how many times I had driven by there before.

"Q. About how many times?

"A. I suppose a dozen times.

"Q. How many times did they become frightened?

"(Objected to on the ground that it is irrelevant and inadmissible under the pleadings. Objection sustained, and bill reserved.)"

In the brief on behalf of the plaintiff counsel say:

"The defendant does not deny the injury, nor dispute the time, place, and manner of injury. The averments in defendant's answer follow the usual line of defense in such cases, averring that the driver was a cautious and experienced driver, and the harness and lines the perfection of the harness maker's skill; but not a word of commendation of the horses appears in the answer, not a word as to their breeding, good behavior, or gentleness."

Counsel contends: That the defendant, feeling and knowing that the burden was on him to justify the accident, attempted to do so, but only in certain particulars; that the plaintiff, therefore, has the right to draw out from the witness full particulars bearing upon the accident, as knowledge of the facts was specially and peculiarly within the knowledge of the defendant and the driver, and as to which plaintiff was necessarily ignorant.

That, if defendant attempted to justify at all, he was bound to justify entirely, and not stop short as to the precise fact upon which the attack really rested.

Plaintiff's petition did disclose a cause of action; but it was a cause of action imperfectly and defectively stated. Defendant had the right to object to its vagueness, and to have called on him to amend the same. He did not do so, but reserved his objections until the trial of the case, and then urged them by way of objections to evidence not covered by the pleadings.

We think, from a technical point of view, the objections urged were correct; but inasmuch as, by reason of these objections and through the course pursued by the defendant in respect to the evidence introduced in his own behalf, this court has been uninformed upon a question vitally important for just decision upon the rights and obligations of the parties, and matters can be positively established one way or the other by evidence not difficult of procurement, we have reached the conclusion that in the interest of justice the judgment appealed from should be reversed, and the cause remanded to the district court, and reinstated on its docket, to be further proceeded with according to law; the right being granted to plaintiff to amend his pleadings and make his demand more specific under the cause of action declared upon.

For the reasons herein assigned, it is hereby ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed. It is further ordered, adjudged, and decreed that this cause be remanded to the district court and reinstated on its docket, to be further proceeded with according to law; the right being granted to the plaintiff to amend his pleadings and make his demand more specific under the cause of action which he had declared upon. Question of costs reserved until further final action in the case